Frances Henson OVERMAN, Respondent,

v.

Ralph T. OVERMAN, Appellant.

No. 35238.

Missouri Court of Appeals,
St. Louis District,
Division One.

July 23, 1974.

Motion for Rehearing or Transfer Denied
Sept. 11, 1974.

Application to Transfer Denied
Nov. 12, 1974.

Harold B. Bamburg, St. Louis, for appellant.

Lashly, Caruthers, Thies, Rava & Hamel, Michael C. Walther, Clayton, for respondent.

KELLY, Judge.

The question presented to the Court in this appeal is whether a Tennessee divorce decree awarding alimony to the wife, Frances Henson Overman, payable in monthly installments is entitled to registration under the Uniform Enforcement of Foreign Judgments Law, Rule 74.79, V.A. M.R., and Sec. 511.760 RSMo. 1969, V.A. M.S.[1] For reasons hereinafter stated we hold that it is not and therefore reverse and remand the cause to the Circuit Court with directions.

On January 5, 1972, the respondent wife, (hereinafter referred to as "the petitioner") filed a Petition for Registration of a Foreign Judgment in the Circuit Court of St. Louis County, Missouri, seeking to have registered a divorce decree rendered on the 22nd day of January, 1968, in the Trial-Justice Court of Anderson County, Tennessee, wherein she was awarded the sum of $9,300.00 per year alimony to be paid in monthly installments of $775.00. In her petition she alleged that the appellant-husband (hereinafter referred to as the "defendant") had failed to comply with the terms of the judgment and as of December 31, 1971, he was $8,000.00 in arrears in his

monthly payments; that interest in the amount of $445.00 was due on the aforesaid payments which are past due, and she prayed that the judgment be registered in the Court and made a final judgment of the Court pursuant to Rule 74.79. A copy of the decree was attached to her petition and since no challenge was made to its compliance with paragraph (c) of Rule 74.79 with respect to authentication we shall assume that it complied with that requirement.

After filing her petition for registration, petitioner obtained an execution and writ of garnishment in aider thereof directed to the defendant's employer garnisheeing defendant's wages for the period January to April, 1972.

On January 29, 1972, the defendant filed a Motion to Set Aside Registration of Foreign Judgment or, in the Alternative, to Quash or Stay Execution and Garnishment and For Other Relief. As grounds for this motion the defendant alleged that he had fully complied with the alimony requirements of the divorce decree until the summer of 1969, when his financial condition worsened; that he then advised the petitioner of this fact and petitioner agreed that thenceforward he would be required to pay only $500.00 alimony monthly in lieu of the $775.00 per month ordered in the divorce decree; and that in reliance on this agreement between the parties he did not seek a modification of the decree in this regard in the Tennessee Court which had entered the decree and thereafter faithfully performed the agreement and made the $500.00 payments in accord therewith commencing in July, 1969, and up to the date on which petitioner commenced these proceedings and garnisheed his wages. He contended that by reason of the facts alleged petitioner was guilty of laches and should be estopped from claiming any ali-

1. All references to the statutes of Missouri are to RSMo.1969, V.A.M.S. unless otherwise noted and all references to the Rules of the Supreme Court of Missouri are to V.A. M.R. All references to the Uniform Enforcement of Foreign Judgments Law hereafter in this opinion shall be directed to Rule 74.79 only because the Rule and the Statute contain the same language and provisions.

mony in excess of the amount to which the parties had agreed, to-wit: $500.00 monthly, and that he was therefore not indebted to petitioner in any amount. In addition to the aforesaid, defendant also alleged that the Tennessee decree sought to be registered was subject to retroactive modification and therefore the Courts of Missouri were under no constitutional duty to afford the judgment full faith and credit to any greater degree than were the Tennessee courts and further requested postponement of a trial on the petitioner's right to garnishee his wages until such time as he could apply to the Tennessee Court which had entered the decree for a modification of the decree with respect to the alimony award. The record fails to reveal any action on defendant's motion until July 10, 1972, when he filed a Motion to Modify Decree for Alimony seeking to have the Tennessee decree modified by the Missouri Court on the same grounds alleged in the previously filed motion of January 29, 1972. On that same date, July 10, 1972, petitioner filed a Motion to Dismiss Defendant's Motion to Modify on the ground that "this court does not have jurisdiction over the subject matter."

Sometime after July 10, 1972,—the record in this Court does not reveal—petitioner, without notice to the defendant, obtained from the Trial Justice Court of Anderson County, Tennessee, a "Supplemental Decree" entered by the same judge who entered the original decree in the Tennessee divorce case in the same cause—"No. 5019"—which "ordered and adjudged" that the decree of January 22, 1968 was "in all things final at the time of entry" and "that any and all sums of money which said final decree adjudges the said defendant, Ralph T. Overman, Sr., obligated to pay to Frances Henson Overman, are due and owing and said judgment is not subject to modification because with respect same was based upon the solemn agreement of the parties, and because all of the said sums have accrued and are past due and there has been no application whatsoever

in this Court that the said decree be modified in any way, except a petition made shortly after the decree was entered, which said petition for modification was dismissed by agreement of said Ralph T. Overman, Sr." The "Supplemental Decree" further ordered and adjudged that all alimony payments by way of support and all of the other provisions of the decree are made final and have been final since the entry of same and 30 days thereafter, that execution issue by way of garnishment, or by execution upon the property of the defendant, or by any other means, including contempt, to collect the delinquent payments. Copies of the "Supplemental Decree" over the certification of the Clerk of the "Criminal-Trial Justice Court" that the copy "is a true and correct copy of the original of this instrument filed in this cause" were mailed to the Judge of the St. Louis County Circuit Court before whom the motions were pending and to defendant's attorney of record in those proceedings. On August 4, 1972, defendant's counsel wrote to the Circuit Court Judge before whom the cause was pending acknowledging receipt of a copy of the "Supplemental Decree" on August 2, 1972, commenting upon the legal effect of the "Supplemental Decree" as he viewed it and accusing the petitioner of sneaking into the Tennessee Court while proceedings were pending in the St. Louis County Circuit Court without notice to either his client or himself. He offered to meet with the Judge on the matter and with petitioner's counsel if any further discussions should be necessary.

Thereafter, on February 20, 1973, the Circuit Court entered its order overruling defendant's Motion to Set Aside Registration of Foreign Judgment or, in the Alternative, to Quash or Stay Execution and Garnishment and For Other Relief and sustaining petitioner's Motion to Dismiss Defendant's Motion to Modify. This appeal followed.

The enforcement of alimony awards in a divorce decree rendered in the courts of

one state of the Union in the courts of a sister state have for many years been by the cumbersome process of filing a suit in the sister state on the judgment of the rendering state and establishing in the forum of the sister state a judgment enforceable in the latter state. This was the only process available to non-residents in this State. To facilitate the enforcement of foreign divorce decrees awarding alimony to the wife, the Legislature of this State in 1951 enacted the Uniform Enforcement of Foreign Judgments Law, Sec. 511.760, which was then adopted by the Supreme Court of Missouri as Rule 74.79. This Law establishes a procedure for the enforcement of foreign judgments in the courts of this State and provides a summary judgment procedure for doing so which is much less cumbersome than the former procedure. Beneficial Finance Co. v. Yellow Transit Freight Lines, Inc., 450 S.W.2d 222, 225 [1] (Mo.App.1969). Paragraph (p) of the Rule however, expressly reserves the right of a judgment creditor to bring an action to enforce his judgment instead of proceeding under this Rule unimpaired, and paragraph (q) of the Rule provides that "this section shall be so interpreted and construed as to effectuate its general purpose to make uniform the law of those states which enact it."

A party seeking to enforce a foreign judgment under the Rule need not bring a suit on the judgment, but need only apply for registration of the foreign judgment in a Missouri Court having jurisdiction in the action, Rule 74.79(b), by filing a verified petition for the registration setting forth a copy of the judgment to be registered, the date of its entry and the record of any subsequent entries affecting it, all authenticated in the manner authorized by the laws of the United States or of this State, and a prayer that the judgment be registered. Rule 74.79(c). At any time *after registration* the petitioner is entitled to have summons issued and served upon the judgment debtor, as in an action brought upon the foreign judgment, for the purpose of obtaining jurisdiction of the judgment debtor. Rule 74.79(d). Also, at any time after the registration and regardless of whether jurisdiction of the person has been secured or final judgment has been obtained, a levy may be made under the registered judgment upon any property of the judgment debtor which is subject to execution or other judicial process for satisfaction of judgments. Rule 74.79(f). The judgment debtor must plead within 30 days after jurisdiction of his person has been obtained. If the judgment debtor fails to plead within the time specified or if the court after hearing has refused to set the registration of the judgment aside, the registered judgment becomes final and constitutes a personal judgment of the court in which it is rendered. Rule 74.79(g). If, on the other hand, the court after hearing enters an order setting aside the registration of the judgment said order constitutes a final judgment in favor of the judgment debtor. Rule 74.79(j). To be entitled to registration, however, the foreign judgment must be a "judgment, decree or order of a court of the United States or of any state or territory *which is entitled to full faith and credit in this state."* (Emphasis supplied.) Rule 74.79(a)(1).

The dispositive issue in this case is whether this Tennessee divorce decree awarding petitioner alimony payable in monthly installments is a judgment of a court of a state which is entitled to full faith and credit in this state. Rule 74.-79(a)(1).

The defendant contends that the Tennessee alimony decree is not a judgment entitled to full faith and credit in the State of Missouri and is not therefore entitled to registration under Rule 74.79. The thrust of his contention is that under Tennessee law the decree is subject to retroactive modification and therefore does not possess the finality necessary to bring into play the full faith and credit clause of the Federal Constitution, Art. IV, Sec. 1, and Act of May 26, 1790, c. 11, as amended R. S. Sec. 905, 28 U.S.C. Sec. 1738. He relies on the following authorities: New York

ex rel. Halvey v. Halvey, 330 U.S. 610, 67 S.Ct. 903, 91 L.Ed. 1133 (1947); Taylor v. Taylor, 356 Mo. 55, 201 S.W.2d 176 (1947); Sistare v. Sistare, 218 U.S. 1, 30 S.Ct. 682, 54 L.Ed. 905 (1910); Barber v. Barber, 323 U.S. 77, 65 S.Ct. 137, 89 L.Ed. 82 (1944); Hanna v. Hanna, 224 Mo.App. 1142, 32 S.W.2d 125 (1930); Harrington v. Harrington, 233 Mo.App. 390, 121 S.W.2d 291 (1938); Morton v. Morton, 223 Tenn. 491, 448 S.W.2d 69 (1969); Daugherty v. Dixon, 41 Tenn.App. 623, 297 S.W.2d 944 (1956); Crane v. Crane, 26 Tenn.App. 227, 170 S.W.2d 663 (1942) and Gossett v. Gossett, 34 Tenn.App. 654, 241 S.W.2d 934 (1951).

Petitioner, on the other hand, argues that the decree is a final judgment and is therefore entitled to registration. In support of her position she relies on Sistare v. Sistare, *supra*; Barber v. Barber, *supra*; Hicks v. Hicks, 26 Tenn.App. 641, 176 S.W.2d 371 (1943); and Damron v. Damron, 212 Tenn. 14, 367 S.W.2d 476 (Tenn.1963). She would distinguish Gossett and Crane on the grounds that they involve child support payments; Daugherty, whether the remarriage of the wife automatically terminates the duty of the divorced husband to pay alimony; and Morton, the power of the trial court to forbid the wife from collecting past due alimony by running a series of garnishments on her former husband's employer.

The Supreme Court of the United States is the final arbiter with respect to what judgments of one forum are entitled to the full faith and credit mandate of the Federal Constitution in the courts of the other states. Hunt v. Monroe, 32 Utah 428, 91 P. 269 (1907). Application of the constitutional requirement to alimony decrees of one state in judicial proceedings thereon in a sister state have for many years been couched in the concept of finality. In Barber v. Barber, 21 Haw. 582, 62 U.S. 582, 16 L.Ed. 226 (1859) the rule that periodic installments of alimony constituted

debts of record entitled to full faith and credit as the installments matured was announced. However, in 1901 the Court in Lynde v. Lynde, 181 U.S. 183, 21 S.Ct. 555, 45 L.Ed. 810, introduced the concept of finality when it held that a provision for the payment of alimony in futuro was not a final judgment for a fixed sum and was not therefore entitled to full faith and credit in the forum of a sister state. These two decisions were considered and held not to be in conflict in Sistare v. Sistare, *supra*, where the Court held that decrees for the payment of alimony in the future were entitled to full faith and credit as to past accrued installments, *if* the right to them was "vested," so that they could not be retroactively annulled or modified by the original judgment court, and that this result followed even though the past accrued installments had not previously been reduced to a money judgment in the state of rendition and regardless of whether a power of prospective modification had been retained there.

However, if as defendant contends, the decree we are here considering is subject to being retroactively modified by the rendering court, Sistare is of no assistance. The Supreme Court of the United States has left unresolved the question whether an alimony judgment payable in installments which have already accrued and remain past due and unpaid but which is subject to retroactive modification or recall in the forum where rendered, but which is not yet modified, is entitled to full faith and credit in the courts of a sister state. In Barber v. Barber, 323 U.S. 77, 65 S.Ct. 137, 89 L.Ed. 82 (1944) and in Griffin v. Griffin, 327 U.S. 220, 66 S.Ct. 556, 90 L.Ed. 635 (1946), the Court declined to rule on this point because it was found to be unnecessary to rule on the issue in arriving at the decisions in those cases.

The question then is reduced to determining whether under Tennessee law this decree is subject to retroactive modifi-

cation in Tennessee courts.[2] To answer this question requires an examination of the Tennessee statutes and decisional law of the state. We are required by Rule 55.-21(b) to take judicial notice of the public statutes and judicial decisions of a sister state in every action or proceeding wherein the pleading states that the law of another state is relied upon or contains allegations which show that the law of another state must be applied. We find that the pleadings and the allegations in this case are here present and make the Rule applicable.

Under Tennessee law the court rendering a divorce decree and award of alimony retains jurisdiction and control of the order or decree and, on application of either party, may decree an increase or decrease of the alimony allowance, "cause being shown." Sec. 36–820 T.C.A.[3] This is so whether the decree includes an order to that effect within the decree itself. It is conceded by both parties that the statute does not specifically in haec verba, provide for retroactive modification of alimony awards payable in installments after they have become past due. Defendant, however, contends that the judicial decisions of the Tennessee courts have so construed the statute. Petitioner, on the other hand, argues that these decrees are final judgments and the possibility of modification does not deprive them of finality.

The Courts of Tennessee are in agreement that the primary reason for the enactment of Secs. 36–820 and 36–828 T.C.A. was to remove the difficulty which had been encountered with respect to future installments of alimony and child support in cases where a divorce a vinculo had been granted because under the law as it previously existed such a decree was final and passed beyond the court's control after the term at which it was entered and could not thereafter be modified. Davenport v. Davenport, 178 Tenn. 517, 160 S.W.2d 406, 409 [6] (1942); Hicks v. Hicks, *supra*, 176 S. W.2d l.c. 375; Brown v. Brown, 198 Tenn. 600, 281 S.W.2d 492; 503 (1955).

Counsel for the petitioner in his brief rests his argument on a line of cases which have in the course of disposing of causes presented to them in different postures held that Sec. 36–820 T.C.A. does not affect the finality of divorce decrees wherein the wife is granted alimony, custody and child support. The finality of which those courts are speaking is stated in Hicks v. Hicks, *supra*, 176 S.W.2d l.c. 375:

> "It was final in the sense that it left no issue undetermined, decided all matters, disposed of the whole merits of the case, and determined the custody of the child *upon the facts then existing.* It was also final in the sense that, not being on its face a consent decree, it was appealable as a matter of right and subject to being reversed or set aside only in one of the modes provided for appellate review of final judgments and decrees." (Emphasis supplied).

The Court in Hicks did however recognize that the decree was not *final* in the sense that it precluded a *later* decree upon new facts or changed conditions making a change of custody necessary for the welfare of the child. Nor did Hicks pass upon the power of a Tennessee Court having jurisdiction of the persons, being the court which rendered the decree and pursuant to the powers of continuing jurisdiction conferred on it by Sec. 36–820 T.C.A.,

---

2. Missouri courts are not empowered to retroactively modify alimony installment payments which have accrued and are unpaid. Meyers v. Meyers, 22 S.W.2d 853 (Mo.App.1929) and Maxey v. Maxey, 212 S.W.2d 810 (Mo.App. 1948).

3. Sec. 36–828 T.C.A. authorizes Tennessee Courts having jurisdiction of annulment, divorce or separate maintenance suits where custody of a minor child or children is in question to make appropriate orders for the care, custody, and control of said child or children even where the annulment, divorce or separate maintenance is denied. It too provides that a decree for care, custody of a child and for its support "shall remain within the control of the court and be subject to such changes or modification as the exigencies of the case may require."

to retroactively modify the decree upon a proper showing of change of circumstances occurring since the rendition of the decree and the finality of that decree for the purposes of full faith and credit under the Constitution of the United States.

In reading the cases cited by both petitioner and defendant we do not find that they conflict with one another. Damron v. Damron, *supra*, cited by petitioner merely reaffirms Hicks with respect to the "quality of finality" of a child custody award; it does not in any manner decide the power of a court to retroactively modify that decree.

Petitioner further argues that Barber v. Barber, 323 U.S. 77, 65 S.Ct. 137, 89 L.Ed. 82 (1944) construed a statute similar to Sec. 36–820 T.C.A. and held that the power to modify retained in the rendering court related only to the "order of allowance" and not to a judgment rendered for the amount of unpaid allowance accrued under the order and therefore the judgment was entitled to full faith and credit. We find no quarrel with petitioner's position, except that we do not have here a judgment on the allowance as was present in the Barber case. In this current case we are not concerned with a judgment of the kind before the Barber Court, nor does the decree here order execution to issue.

Tennessee cases which have ruled directly on the power of Tennessee Courts to retroactively modify alimony awards pursuant to the provisions of Secs. 36–820 and 36–828 are Gossett v. Gossett, *supra*; Crane v. Crane, *supra*; Daugherty v. Dixon, *supra*; and Morton v. Morton. Daugherty v. Dixon, *supra*, recognized that there is a division of authority on the issue of retroactive modification, but, meeting the question head-on, the Court said, 297 S.W.2d l.c. 945:

"Our statute, T.C.A. § 36–820 authorizes 'an increase or decrease of' the allowance of alimony 'on cause being shown'. It is true that this does not specifically authorize retroactive action or complete cancellation. But our courts have held that in view of the humanitarian purposes involved the relief might be retroactive. Crane v. Crane, . . ., and Gossett v. Gossett, . . ., from which it follows that the 'decrease' might be so great as to make the allowance come within the de minimis rule. In short, it was the purpose of this beneficent statute to give the trial court such elasticity as was necessary to meet the equities of the case and as well take care of the interest of the State, which is a third party in interest in divorce cases."

Further, at l.c. 947, the Court said: "Regardless of the division of authority on this question, we think the sounder rule is to allow the court to grant relief from past due installments of alimony as was done in child support cases." The Court of Appeals then affirmed the action of the Chancery Court decree which relieved the divorced husband of all liability for past alimony which had accrued as well as alimony for the future.

The Supreme Court of Tennessee in Morton v. Morton, *supra*, citing Crane and Gossett in an opinion reversing the Court of Appeals, quoted from a dissent in that Court in the Morton case written by Judge Carney as follows: "On the principle that the greater includes the lesser I think the fact that the trial court has the authority to forgive in its entirety a past due award of alimony gives the implied authority to the same court to forbid the wife from collecting an award of alimony by garnishment." The Court thereupon reversed the Court of Appeals and held that the trial court acted within its authority in ordering the wife's counsel to refrain from having garnishment issue without permission of the Court. Crane v. Crane, *supra*, held, 170 S.W.2d l.c. 665: "In view of the broad terms and humanitarian purposes of these statutes, we are of the opinion that the decree for the support of this minor child, even as to past-due and unpaid installments, could be modified at any subsequent term, so as to increase or decrease

the allowance made, as the exigencies of the case might require." Gossett v. Gossett, *supra,* held that the Chancellor, in a proceeding by the wife for attachment of the body of the husband and father for contempt for failure to pay child support awarded in a divorce decree, and wherein the husband answered that he was not "in wilful and deliberate disobedience of the orders of the Court" and prayed that if he was found to be not guilty of contempt, he be relieved of the payment of the alimony upon the making of a settlement in a stated sum in accordance with an agreement he had reached with the wife, was empowered, even where he found the husband guilty of contempt, to reduce the amount of the past due child support and order him to pay that amount into the registry of the Court and thereby purge himself of contempt. In response to the wife's contention that since the husband was in contempt he should not be allowed to file any pleading or make any motion on the merits, or to ask any favor, until he had answered the contempt charge and, if found guilty, purged himself, the Court said, 241 S.W.2d 1.c. 936: "An inspection of the quoted part of the answer of respondent readily discloses that he asked for relief from delinquent payments *only in event* he was found *not* guilty. Since he was found guilty, it is obvious that the above authorities have no application to the instant proposition and that whatever the Court did was done on its own initiative and in the light of the whole situation." And again, 1.c. 937: "We think it well to say, however, that the Chancellor had the power of his own volition to grant relief from past due installments, although error is not assigned. In Crane v. Crane, . . ., it was held that Code Sections 8446 (36–820) and 8454 (36–828) are remedial and should be liberally construed to include the power of the Court to cancel or modify delinquent installments of child support on petition of the respondent . . . We hold that the Chancellor may exercise the power on his own initiative, where the evidence justifies it."

Petitioner's counsel, in oral argument, contended that the decree was not subject to modification because the alimony award was based upon an agreement of the parties and was subject to modification upon application of both of the parties, not on the application of only one of the parties. The original decree recites that "the parties hereto entered into a full and complete alimony, support, property and custody agreement" which "the Court is, therefore, pleased to and does in all things ratify and confirm the same, deeming the same to be fair and just to all parties concerned. Pursuant thereto the defendant, Ralph T. Overman, Sr., is ordered and directed to pay to the complainant as alimony the sum of Nine Thousand Three Hundred & No/100 ($9,300.00) Dollars per year to be paid in monthly installments on or before the 1st day of February 1968, and each and every month thereafter at the rate of Seven Hundred Seventy Five & No/100 ($775.00) Dollars per month." There was a detailed disposition of the property of the parties with respect to the family home, the furniture and fixtures therein, an automobile and some policies of insurance. So far as the record before us reveals, the agreement was not before the trial court and except for the reference in the decree we have no knowledge of its contents. Defendant's brief makes no mention of this contention and we could properly refuse to rule on it. Nevertheless, Tennessee courts have held that property settlements, even when incorporated into the divorce decree, do not preclude subsequent modification of the decree upon a showing of change of circumstances. "In such cases the agreement is regarded as no more than the evidence upon which the court will fix the amount . . . The agreement becomes merged in the decree and loses its contractual nature." Morrissey v. Morrissey, 214 Tenn. 112, 377 S.W.2d 944, 946[2] (1964). Doty v. Doty, 37 Tenn.App. 120, 260 S.W.2d 411, 413[5] (1952), in commenting upon the effect of Sec. 8446 (Sec. 36–820) T.C.A., said: "Moreover, it is everywhere held

that if the contract adopted by the Court is of a dual nature, that is, if it settles property rights between the husband and wife and also claims for alimony and support, then if the provision for the latter is clearly separable, the court has the same power to modify the executory provision for alimony or support that it would have if the agreement and the decree based thereon had related solely to alimony or support." See also: Anno. 166 A.L.R. 695 and Note 166 A.L.R. 693, 694.[4] We hold that this contention if timely made is without merit.

■ From an examination of the Tennessee decisional law construing Sec. 36–820 T.C.A. we conclude that the decree in this case is subject to retroactive modification as to past due installments of alimony which have accrued and remain unpaid. We further conclude that since the decree is modifiable retroactively and the Supreme Court of the United States has, up until this time, left to the several States of the Union whether they will recognize decrees of this type, Missouri courts are not constitutionally required to give them full faith and credit under Art. IV Sec. 1 and the Act of May 26, 1790, c. 11, as amended R.S. Sec. 905, 28 U.S.C., sec. 1738.

■■ Nor is the infirmity in the decree cured by the "Supplemental Decree" attached to the transcript in this cause. There is no evidence in the record—other than its presence—that it was filed either with or without leave of court. It does not affirmatively show that the defendant had notice and an opportunity to be present and defend against its entry in the Tennessee Court and it is unrefuted that defendant had no notice of the proceedings by which it was obtained until after the fact. It might be argued that the defendant was charged with knowledge that the decree was, by its terms, retained "on the docket for review by either party upon proper application" and was retained in the control of the Trial Justice Court of Anderson County, Tennessee, by the provisions of Sec. 36–820 T.C.A. However, we conclude that procedural due process requires more than this. It requires notice and an opportunity to be heard, particularly when defendant was being deprived of his right to review or an adjudication of his rights under the original divorce decree in his absence. Griffin v. Griffin, *supra*; Allingham v. Allingham, 141 Colo. 345, 348 P.2d 259 (Colo. banc, 1959); Lewis v. Lewis, 49 Cal.2d 389, 317 P.2d 987 (banc, 1957), Anno. 168 A.L.R. 232. Furthermore we conclude that said "Supplemental Decree" would not have been admissible in this cause because not authenticated in accord with the requirements of Sec. 490.130 which requires not only the certificate of the clerk of the court with the seal of the court annexed, if there be a seal, but also a certification by the judge, chief justice or presiding magistrate of the court that the court record is "attested in due form." This document bears a certification of the clerk of the court "that it is a true and correct copy of the original of this instrument filed in this cause" but fails to have appended the required certification of the judge that it is in due form. State v. Young, 366 S.W.2d 386, 388[4] (Mo.1963).

Because of the posture in which this appeal has been presented to us, i. e., on whether or not this Tennessee divorce decree is entitled to registration under the Uniform Enforcement of Foreign Judgments Law of the State of Missouri as a decree entitled to full faith and credit in the constitutional sense, we are precluded from considering whether, as a matter of comity the Circuit Court of St. Louis County, Missouri, can order the Tennessee decree registered. This case was briefed

---

4. Missouri courts hold that where an alimony award is entered pursuant to a property settlement between the parties, or by stipulation, and the court has not exercised its independent discretion given to it by statute in setting the amount of alimony, the alimony provision of the decree is not subject to modification on subsequent change of circumstances. Singer v. Singer, 390 S.W.2d 605, 608 [5, 6] (Mo.App.1965) and Ferriss v. Ferriss, 477 S.W.2d 745, 748 (Mo.App.1972).

and argued on the theory of constitutional full faith and credit in this Court and we are not at liberty to stray from the framework in which the parties have chosen to present this appeal to us.

Therefore we find it necessary to reverse the ruling of the trial court and remand the cause thereto with directions to quash the garnishment heretofore ordered issued, to set aside its order overruling defendant's Motion to Set Aside Registration of Foreign Judgment and in lieu thereof enter an order sustaining defendant's Motion to Set Aside Registration of Foreign Judgment and dismiss petitioner's case. We make no specific order with respect to defendant's Motion to Modify the Tennessee decree since after setting aside the registration of the Tennessee decree and dismissing petitioner's application for registration of the decree, the defendant will still have available to him an opportunity to return to the Trial-Justice Court of Anderson County, Tennessee,—as he prayed in his original Motion—and seek a modification of said decree there.

SIMEONE and WEIER, JJ., concur.